Pedro MORENO, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00395–CR.

Court of Appeals of Texas,
San Antonio.

July 23, 1997.

jury instruction on the parole law. Finding no error, we affirm.

## Discussion

### 1. Mistrial

■ In his first two points of error, Moreno contends the trial court erred in denying his motions for mistrial. We review these contentions with the abuse of discretion standard. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App.1993).

#### a. Juror Misconduct

■ In his first point of error, Moreno asserts the trial court erred in denying his motion for mistrial based on the misconduct of juror Ruben Barrera. For the first time on appeal, Moreno also complains that Barrera "lied on the [written] juror information sheet about being a witness in a previous criminal matter." This complaint was waived because Moreno failed to bring it to the trial court's attention. *See* Tex.R.App. P. 52(a). We therefore address only Moreno's assertion that Ruben Barrera failed to orally disclose material information before he was selected to sit on the jury.

■ During voir dire, defense counsel asked the venire to raise their hands if anyone had a "close family member" that had been the victim of a violent crime such as "assault, robbery, aggravated assault, attempted murder, [or] murder." A venire member raised her hand; indicated she was Leticia Barrera and not Merlyn Barrera, another venire member; and said she "knew Barrera," apparently a local murder victim. Although defense counsel addressed other venire members, he did not speak with Ruben Barrera.

After the jury was empaneled and before opening argument, Moreno's attorney told the trial court that Ruben Barrera had been selected to sit on the jury but had failed to disclose during voir dire that his grandfather, Lazaro Barrera, had been the victim of capital murder. In chambers, the trial court asked Barrera whether "you raise[d] your hand or not," to which Barrera responded, "I

Calixtro Villarreal, Rio Grande City, Alex Hernandez, Law Offices of Calvert, Bannert & Hernandez, PLLC, San Antonio, for appellant.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

HARDBERGER, Chief Justice.

The appellant, Pedro Moreno, was indicted for murdering Magdalena Alaniz after shooting her at close-range with a semi-automatic pistol. A jury convicted Moreno of manslaughter, found he had used a deadly weapon, and sentenced him to confinement for fifteen years and one day. In three points of error, Moreno contends the trial court erred by (1) denying a mistrial after a potentially biased juror withheld information during voir dire; (2) denying a mistrial after the complainant's family members left the courtroom crying; and (3) failing to timely submit a

**46** 

did raise it. I guess he didn't see me."[1] The trial court did not permit defense counsel to ask Barrera about any potential prejudices.

 The voir dire process is designed to insure a fair and impartial jury. *Armstrong v. State,* 897 S.W.2d 361, 363 (Tex.Crim.App. 1995); *see also* TEX.R.APP. P. 30(b)(8) (granting new trials for juror misconduct). When a juror withholds material information, such as potential biases against the defendant, the juror impairs the parties' ability to select an impartial jury. *Armstrong,* 897 S.W.2d at 363; *Petteway v. State,* 758 S.W.2d 861, 865 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). While a potential juror must honestly respond to questions, defense counsel must actively elicit information that might indicate a juror's inability to be truthful and impartial. *Id.* at 363–64. Unless defense counsel asks specific questions, the material information that a juror fails to disclose is not really "withheld." *Id.* at 364.

In this case, Ruben Barrera said he raised his hand in response to counsel's general question; thus, the trial court did not abuse its discretion in finding that Barrera had not withheld material information. *See Bustos v. State,* 1997 WL 135637, *5 (Tex.App.—Amarillo, March 25, 1997, pet. ref'd) (deferring to trial court's evaluation of juror's explanation).[2] Even if Ruben Barrera had not raised his hand, defense counsel should have been alerted to potential problems by the existence of two other people named Barrera on the venire, one of whom said she "knew Barrera," presumably, Ruben's grandfather. Because the trial court did not abuse its discretion in denying Moreno's motion for mistrial, we overrule Moreno's first point of error.

**b. Juror Influence**

In his second point of error, Moreno argues the trial court erred in denying his motion for mistrial based on an emotional display by the complainant's family. When the State questioned the Nueces County medical examiner about the complainant's cause of death, at least two family members cried and left the courtroom. Moreno objected to the emotional display, but he did not request a curative instruction. The trial court recessed for ten minutes and advised the State to caution the family against emotional displays. Although there were no more incidents, Moreno alleges the State twice referred to the outburst during closing arguments by (1) asking the jury to choose guilt as if "you were looking at it from [the complainant's] standpoint"; and (2) asking the jury to decide "what a life is worth" in assessing an "appropriate punishment."

 To show that external influences on the jury created reversible error, the defendant must demonstrate actual or inherent prejudice. *Howard v. State,* 941 S.W.2d 102, 117 (Tex.Crim.App.1996) (acknowledging that the federal and state tests "are essentially interchangeable"); *Gutierrez v. State,* 945 S.W.2d 287, 292 (Tex.App.—San Antonio 1997, no pet.). Actual prejudice occurs when the jurors articulate "a consciousness of some prejudicial effect." *Howard,* 941 S.W.2d at 117. Inherent prejudice occurs when "an unacceptable risk is presented of impermissible factors coming into play." *Id.* In other words, bystander conduct that interferes with normal trial proceedings will not result in reversible error unless the defendant shows "a reasonable probability that the conduct or expression interfered with the jury's verdict." *Id.* (citing *Landry v. State,* 706 S.W.2d 105, 112 (Tex.Crim.App.1985)).

 Relying on *Stahl v. State,* 749 S.W.2d 826 (Tex.Crim.App.1988), Moreno claims the jurors were inherently prejudiced by the family's emotional outburst coupled with the State's closing argument. In *Stahl,* the victim's mother cried on the witness stand, and the State alluded to the emotional outburst during closing arguments, despite the trial court's ruling not to do so. 749

---

**1.** The State suggests that it might have been difficult to see Ruben Barrera's hand because more than a hundred people were called to jury service and the courtroom was so crowded that members of the venire sat in the jury box.

**2.** Moreno mistakenly relies on *Salazar v. State,* 562 S.W.2d 480, 481 (Tex.Crim.App.1978), where the juror lied while answering direct questions.

S.W.2d at 831. While Moreno characterizes *Stahl* as a case involving outside influence on the jury, it is more properly characterized as a case involving prosecutorial misconduct. *See Gonzales v. State,* 775 S.W.2d 776, 780 (Tex.App.—San Antonio 1989, pet. ref'd).[3]

In this case, there is no evidence of prosecutorial misconduct. *See Harris v. State,* 799 S.W.2d 348, 350 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Furthermore, the State's closing arguments were proper pleas for law enforcement. *See Glivens v. State,* 918 S.W.2d 30, 34 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *Bell v. State,* 774 S.W.2d 371, 375 (Tex.App.—Austin 1989, pet. ref'd). While the family's emotional display necessitated a recess, Moreno has not shown that the outburst interfered with the jury's verdict. *See Howard,* 941 S.W.2d at 118 ("presence of a victim's family ... is alone not enough to establish a reasonable likelihood of prejudice"); *Miller v. State,* 741 S.W.2d 382, 391 (Tex.Crim.App.1987) (although witness attempted to reach defendant "by going over the rail," record did not show what jury saw or heard). We therefore hold the trial court did not abuse its discretion in denying Moreno's motion for mistrial. We overrule Moreno's second point of error.

## 2. Parole Instruction

In his third point of error, Moreno complains the trial court erred in failing to submit a parole instruction in its initial jury charge, although neither party objected to the lack of this instruction. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4 (Vernon Supp.1997) (discussing parole and good time but prohibiting their application). After deliberations began, the jury asked about the amount of time Moreno would have to serve if it sentenced him to ten years and one day or fifteen years and one day. The trial court responded by giving the instruction mandated by article 37.07. Moreno objected to the instruction, arguing that it implicitly rejected the possibility of probation.

 Submission of the parole instruction is mandatory, but any error caused by the trial court's initial failure to include it was waived by Moreno's failure to object to its absence. *Ly v. State,* 943 S.W.2d 218, 220 (Tex.App.—Houston [1st Dist.] 1997, pet. filed); *Nixon v. State,* 940 S.W.2d 687, 691 (Tex.App.—El Paso 1996, pet. filed); *Ramos v. State,* 831 S.W.2d 10, 17 (Tex.App.—El Paso 1992, pet. ref'd). When the jury's note indicated it was considering the parole law, the trial court cured its initial error by submitting a supplemental charge. *Wilbon v. State,* 1996 WL 502216, *3, —— S.W.2d ——, —— (Tex.App.—Amarillo, Sept. 6, 1996, pet. ref'd); *Nixon,* 940 S.W.2d at 691. Because the trial court did not err, we overrule Moreno's third and final point of error.

### Conclusion

Having overruled appellant's points of error, we affirm the trial court's judgment.

---

**3.** Even if *Stahl* were applicable, Moreno waived error by failing to object to the State's closing argument. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997); *Stahl,* 749 S.W.2d at 831.